UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| COURTNEY B. SIMPKINS,                 ) | Civil Action No.: 4:22-cv-01314-TER |
|                                                          ) | |
| Plaintiff,          ) | |
|                                                          ) | |
| -vs-                                                ) | |
|                                                          ) | **ORDER** |
| KILOLO KIJAKAZI,                          ) | |
| Acting Commissioner of Social Security, ) | |
|                                                          ) | |
| Defendant.       ) | |
| _____ ) | |

      This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

**A.       Procedural History**

      Plaintiff filed an application for DIB and SSI in July 2019, alleging inability to work since July 2017. (Tr. 20).  His claims were denied initially and upon reconsideration.  Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a vocational expert (VE) testified at hearings in November 2021. The Administrative Law Judge (ALJ) issued an unfavorable decision in January 2022, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 20-34).  Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in March 2022, making the ALJ's decision the Commissioner's final decision.  (Tr.1-3).  Plaintiff filed an action in this court

in April 2022. (ECF No. 1).

**B.    Plaintiff's Background**

Plaintiff was born in December 1986, and was thirty years old on the alleged onset date. (Tr. 33). Plaintiff had past work of hotel maintenance and barber. (Tr. 32). Plaintiff initially alleges disability due to major depressive disorder, recurrent episode unspecified, relationship distress, insulin dependent diabetic, ketoacidosis, neuropathy, hypertension, GERD, high cholesterol, seasonal allergies, seizure disorder, brain meningitis, vision impairments, and obesity. (Tr. 101-102). Pertinent medical records will be discussed under relevant issue headings.

**C.    The ALJ's Decision**

In the decision of January 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 20-34):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since July 24, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus with peripheral neuropathy; vision disorder; seizure disorder; and contracture of the digits of the bilateral hands (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: no operation of foot controls; no more than frequent handling or fingering with the bilateral hands; no more than occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no more than occasional

> balancing, stooping, kneeling, or crouching; no crawling; no work at unprotected heights or with dangerous unprotected, moving mechanical parts; no operation of a motor vehicle; and no work in extreme cold or extreme heat.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 15, 1986 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 24, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues generally the ALJ did not perform an RFC function by function analysis. Plaintiff argues the ALJ did not explain how the RFC addressed seizures. Plaintiff argues under the brief's RFC heading that the ALJ did not properly evaluate the severity of diabetes' symptoms and argues in part the ALJ did not follow *Lovejoy*. Plaintiff argues the severity of symptoms is not reflected in the RFC. Plaintiff argues under a separate heading that the ALJ erred in evaluating Plaintiff's subjective symptoms in accordance with SSR 16-3p; *Lovejoy* is argued again under this

heading of Plaintiff's brief. An "RFC assessment is a separate and distinct inquiry from a symptom evaluation." *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021). The subjective symptom evaluation does relate eventually to forming an RFC determination, when considering how symptoms limit work capacity, but the subjective symptom evaluation is a separate analysis. *Id.*; SSR 16-3p, at *11. Plaintiff's arguments in relation to subjective symptoms will be considered under the subjective symptom evaluation section of this opinion.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included

in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d

at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

***Lovejoy*/Noncompliance**

The ALJ's opinion notes numerous instances of Plaintiff's noncompliance with a variety of treatment modalities. (Tr. 28-32). Plaintiff argues his noncompliance was related to the cost of care. Plaintiff relies on two pages of the record, Tr. 90, 820, and generally multiple records of emergency care to argue the ALJ did not make the required considerations under *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986).

It is well settled that a claimant for Social Security benefits should not be "penalized for failing to seek treatment []he cannot afford." *Lovejoy*, 790 F.2d at 1117. Social Security Ruling 16-3p expressly addresses the situation where a claimant asserts that he has not pursued medical treatment because of a lack of financial resources. *See* SSR 16-3p, 2017 WL 5180304 at *10("we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case," including whether "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services." );*Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("[I]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.").

Plaintiff only mentioned costs during his testimony about eye care that there was an option to surgically put glass behind his eye but "that like would cost a lot, like a lot, and that's like money I know I don't have." (Tr. 90). The voluminous record shows Plaintiff received care regularly. The only other reference cited by Plaintiff in the 1,415 page record was when Plaintiff was seen in May 2019 by Dr. Koduru, M.D. at UP Primary Care, who stated Plaintiff "has not been able to follow up with endocrinology[3] due to financial issues." (Tr. 820). Plaintiff had labs at that visit. Plaintiff was told to regularly exercise. (Tr. 825). At this visit, Plaintiff was also taking more than ten different medications. (Tr. 820-821). The record does not note any financial issues with seeing Dr. Koduru, the lab orders, or receiving his medications and the record has notations of Plaintiff seeing the endocrinologist in the same year and receiving an insulin pump.

SSR 18-3p outlines what factors are considered in making a determination of failure to follow prescribed treatment. Within SSR18-3p, one of the factors for good cause is: "The individual is unable to afford prescribed treatment, which he or she is willing to follow, but for which affordable or free community resources are unavailable. Some individuals can obtain free or subsidized health insurance plans or healthcare from a clinic or other provider. In these instances, the individual must demonstrate why he or she does not have health insurance that pays for the prescribed treatment or why he or she failed to obtain treatment at the free or subsidized healthcare provider." SSR 18-3p, 2018 WL 4945641, *5 (emphasis added). If an "individual fails to follow prescribed treatment that might improve symptoms," the ALJ is permitted to "find the alleged

---

[3] It is noted in March 2019 that Plaintiff had recently seen endocrinology with a lower but still elevated A1C and an insulin pump was being considered. (Tr. 806). In April 2019, Plaintiff was seen by Dr. Koduro for a mosquito bite after returning from a cruise the day before. (Tr. 813). In August 2019, it is noted Plaintiff had again been seen by the endocrinologist who managed Plaintiff's recent insulin pump. (Tr. 833).

intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, *8.

It is evident the record belies Plaintiff's assertions as to *Lovejoy* as Plaintiff regularly received doctor visits and received testing of EEG, CT, MRI, EMG/NCS, prescription medications, an insulin pump, and diabetes test strips and did actually see an endocrinologist. Further, Plaintiff's noncompliance also arose in contexts of items that did not concern costs as in diet and exercise. (Tr. 786, Plaintiff reported he inconsistently took medications, did not exercise or watch his diet; 789, provider had long discussion about complying with medication, sugar checks, and diet and that disability paperwork would not be filled out). The ALJ's statements noting Plaintiff's various incidents of noncompliance do not run afoul of the regulatory analysis and those findings are supported by substantial evidence.

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in performing the subjective symptom evaluation. (ECF No. 19 at 26). Plaintiff argues under the brief's RFC heading that the ALJ did not properly evaluate the severity of diabetes' symptoms. (ECF No. 19 at 24-25).

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the

presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

    1. Daily activities;
    2. The location, duration, frequency, and intensity of pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;

> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

The ALJ considered Plaintiff's allegations:

> The claimant reports that the individual and combined effects of the disorders he experiences have resulted in more than minimal interruption and alteration of daily routines and ability to function. Specifically, the claimant alleges he experiences chronic pain, weakness, respiratory difficulty, and loss of sensation at the extremities, which causes postural and exertional limitations, including a diminished capacity for sitting, standing, walking, bending, squatting, reaching, kneeling, climbing, hearing, seeing, lifting, and carrying. The claimant explains he faces limitation to 5 steps of walking with reliance on hand-held assistive devices such as a rolling walker with the need to rest for 10 minutes following 5 steps of walking, 2-5 minutes of comfortable sitting, 2-4 minutes of standing, and 5 pounds of lifting or carrying. Moreover, the claimant states he experiences at least occasional bilateral finger contracture with decreased use of the hands, uncontrolled diabetes mellitus with neurological and vision manifestation, the need for assistance with personal care, dressing, hygiene, and essentially all activities of daily living, and depression with anxiety, distress, irritability, avoidance of others, and difficulty getting along with others. Furthermore, the claimant says his impairments result in disturbed sleep, as well as deficits in attention, concentration, memory, completing tasks, understanding, following instructions, and coping with stress. Additionally, the claimant notes medicinal side effects such as drowsiness, trouble with focus, and frequent restroom use. The claimant further notes staring spell type seizures due to light exposure with internal and external sunglasses use, which still allows three to four seizures per week with post-ictal fatigue and confusion. Lastly, the claimant posits that he experiences an inability to tend to the full spectrum of routine daily tasks, secondary

>   to the limitations caused by his impairments (Exhibits 4E, 5E, 8E, 10E, 13E, and Testimony).

(Tr. 27). The ALJ found Plaintiff's allegations partially consistent and partially supported by the record evidence. (Tr. 30). The ALJ extensively reviewed the record regarding diabetes, hand issues, and seizure issues. (Tr. 27-32). Plaintiff provides no citations to support the argument that Plaintiff's "frequency and support in the record" of his complaints directly equates to a finding that the subjective symptom evaluation was improper. (ECF No. 19 at 28). The ALJ discussed a plethora of mostly unremarkable examinations and objective tests. (Tr. 28[2017 CT of head and abdomen, 451, 456, 479, 558], 28 [primary care notes of exams, 788, 794, 801, 809, 816, 823, 830, 836], 29[neurologist consultative exam, 908-909], 29[neurologist visit 2020, 915-916], 29 [2021 EEG with 1 minute staring event, 1212]). Plaintiff presents the *Lovejoy* argument specifically as to diabetes[4] symptoms under this heading, which is already addressed above under its own heading. (ECF No. 19 at 28). As stated above, the ALJ discussed evidence of how Plaintiff received regular care for his diabetes, multiple prescription medications, and had the ability to check his sugar and follow exercise and dietary recommendations, yet Plaintiff remained noncompliant.[5] The ALJ noted that despite Plaintiff's recurrent non-compliance with the ability to improve control with adherence to medical advice, the ALJ did accommodate the impact of the impairments to the degree the records supported allegations. (Tr. 30). The ALJ noted Plaintiff even checked himself out of the hospital against medical advice. (Tr. 28, 460, 465, 472, when Plaintiff's glucose was 470 and 481). The ALJ

---

[4] Diabetes treatment compliance is objectively readily attainable as discussed by Plaintiff's treating provider's records. Plaintiff quotes *Arakas* extensively; however, Plaintiff's highlighted impairment is not like fibromyalgia.

[5] *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (inconsistency between a plaintiff's allegations of severity and the treatment sought, or lack thereof, is relevant).

noted Plaintiff was to have an EMG/NCS in 2018 but failed to attend; he received one several years later. (Tr. 28, 29, 970). In limiting Plaintiff's RFC to a reduced range of light work, the ALJ partially credited Plaintiff's allegations.

Considering the ALJ's opinion, it is evident the allegations of location, duration, frequency, and intensity of symptoms were considered, as well as allegations of medication side effects. The ALJ reviewed the treatment Plaintiff received. The ALJ acknowledged Plaintiff's difficulties controlling his blood glucose levels with some neurological and vision related manifestations but that the record showed multiple instances of noncompliance where there existed the ability for improved control of glucose levels with adherence to medical advice. (Tr. 30). The ALJ accounted for the partially supported allegations by limiting Plaintiff to a reduced range of light work.

A claimant's allegations alone can never establish that he is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were only partially consistent with the record.

**RFC**

Plaintiff argues generally the ALJ did not perform an RFC function by function analysis. Plaintiff argues the ALJ did not explain how the RFC addressed seizures. *Lovejoy* issues have already been addressed above as have the subjective symptom type arguments by Plaintiff under

13

Plaintiff's brief's RFC headings as to diabetes.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Seizures

The ALJ found an RFC of :

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: no operation of foot controls; no more than frequent handling or fingering with the bilateral hands; no more than occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no more than occasional balancing, stooping, kneeling, or crouching; no crawling; no work at unprotected heights or with dangerous unprotected, moving mechanical parts; no operation of a motor vehicle; and no work in extreme cold or extreme heat.

(Tr. 26). The ALJ summarized Plaintiff's numerous allegations of limitations, which included

"staring spell type seizures due to light exposure with internal and external sunglasses use, which still allows three to four seizures per week with post-ictal fatigue and confusion." (Tr. 27). The ALJ noted multiple emergency department visits for acute care in 2017. (Tr. 28). The ALJ noted a March 2018 hospital admission related to poor medicinal compliance of diabetes. (Tr. 28). The ALJ noted April 2018 hospital admission for suspected viral meningitis. (Tr. 28). The ALJ discussed treatment with primary care doctor Dr. Koduru. (Tr. 28). In the summer of 2019, Plaintiff began to complain of seizure like activity. An EEG, CT, and MRI were all unremarkable. (Tr. 29). At the 2020 consultative exam, a moderate limitation was found in driving, balancing, operating machinery, and working at heights due to the seizure disorder's moderate impact on those abilities. (Tr. 29). The ALJ noted Plaintiff was seen by Dr. Philippi, a neurologist; Dr. Philippi found that his own exam findings were inconsistent with Plaintiff's allegations and Dr. Philippi found that Plaintiff was vague about his symptoms. (Tr. 29). Plaintiff's neurologist did not recommend anti-epileptic medication but recommended not driving, which the ALJ included in the RFC. (Tr. 26, 29, 916). The ALJ found "the record does not support the degree of seizure activity reported by the claimant with unremarkable diagnostic studies from October 2019, and recent testing that showed only a brief staring spell." (Tr. 31). The September 2021 EEG study was a total 48 hour study; in that time, Plaintiff only had a single one minute event with a 10 minute post-ictal confusion period, and after that ten minutes, Plaintiff returned to baseline. (Tr. 1211). Before the EEG study, Plaintiff reported he had one staring spell per month, lasting at most five minutes. (Tr. 1216). After the EEG study with the one minute staring event, it was explained in detail to Plaintiff that such events frequently occur for psychological reasons like depression, anxiety, or stress or in those with past trauma and cannot be helped with medication, but there are excellent prospects for ceasing the attacks with

appropriate counseling. (Tr. 1230). The ALJ noted that previously Plaintiff had been referred to mental health and failed to comply with 8/16 appointments and during that period, Plaintiff told mental health "he was good while admitting to not participating in planned individual therapy." In 2020, Plaintiff sought to restart therapy, never followed up, and his case was closed. (Tr. 30). The consultative 2020 examination was found as supportive of the RFC limitations as to driving, balancing, machinery, and heights. (Tr. 32).

The ALJ explained which RFC limitations related to Plaintiff's severe impairment of seizure disorder and discussed the relevant evidence in support.

As already discussed in the issues above, in formulating the RFC, the ALJ considered Plaintiff's allegations, subjective reports, objective evidence, and opinions. (Tr. 26-32). The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Where there are two reasonable views of the evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence. Based upon the foregoing, substantial evidence supports the ALJ's RFC.

As to Plaintiff's arguments regarding a proper function by function analysis, the ALJ's RFC and RFC narrative is supported by substantial evidence as displayed above. (ECF No. 19 at 17). The

RFC discussion by the ALJ permitted meaningful review.[6]

## CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

April 27, 2023  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

---

[6] Remand may be appropriate when there is no function by function analysis, but remand is only appropriate when meaningful review is frustrated and the court is "unable to fathom the rationale in relation to evidence in the record." *See Mascio*, 780 F.3d at 636 (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Such is not the case here on either account. *See e.g. Ladda v. Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. Oct. 18, 2018) and *Wilbanks v. Berryhill*, No. CV 1:17-1069-JMC-SVH, 2018 WL 4941121, at *10 (D.S.C. Feb. 7, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4476118 (D.S.C. Sept. 19, 2018).